# APRIL TERM, 1956.*

## LARSON v. FOSTER.

1. PROPERTY—REZONING—RESTRICTIONS AGAINST USE FOR GASOLINE
STATION.

Record presented in residential owners' suit to enjoin erection
of gasoline station on premises across street *held,* to show that
party desiring to erect the station knew at time of his pur-
chase of the property that nearby property owners had ob-
jected to having the premises rezoned so as to be usable for
a gasoline station, and that he knew of a recently recorded
deed in the chain of title barring such use, which deed had been
used in connection with the procurement of rezoning of the
property from residential to commercial purposes.

2. DEEDS—RESTRICTIONS—GASOLINE STATION.

Purchaser of premises *held,* barred from the use thereof for
gasoline station purposes by restriction against such use con-
tained in deed to his agent whose representations that the
premises would not be used for such purpose were entirely
ignored by defendant principal.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—THIRD-PARTY BEN-
EFICIARY STATUTE.

Plaintiffs' claim of rights under the third-party beneficiary statute
as to nonuse of property for gasoline station purposes, con-
tained in recorded deed to defendants' grantors, is not
considered, where defendant is otherwise enjoined from such
use (CL 1948, § 691.541 *et seq.*).

---

* Continued from Volume 345.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 188 *et seq.*
[2] 14 Am Jur, Covenants, Conditions and Restrictions §§ 231, 338.
[2] Garage or filling station as breach of restrictive covenant. 54
ALR 659; 99 ALR 541.
[3] 3 Am Jur, Appeal and Error §·812 *et seq.*

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 12, 1956. (Docket No. 81, Calendar No. 46,719.) Decided June 4, 1956. Rehearing denied September 4, 1956.

Bill by David R. Larson and Marie L. Larson against Charles L. Foster, Irving Chimovitz, Abe Rose, Eva Rose and others to enjoin erection of gasoline filling station. Decree for plaintiffs. Defendants Chimovitz and Rose appeal. Affirmed.

*Brownell, Gault & Andrews* and *Frank C. Smith,* for plaintiffs.

*Joseph & Joseph* and *William Goldberg,* for defendants Chimovitz and Rose.

REID, J. Plaintiffs filed their bill in chancery to enjoin defendants from erecting a gasoline service station on premises at the southwest corner of Court street and Stevens street. From a decree for plaintiffs, defendants Irving Chimovitz, Abe Rose, and Eva Rose, appeal.

Plaintiffs are owners of residential property located at the southeast corner of east Court street and Stevens street. Defendants Foster, Freeman and Murphy attempted to have the southwest corner of said intersection rezoned by the city of Flint from residential to D-4 commercial. This request was denied because of objections by surrounding property owners including plaintiffs.

Thereafter defendant Foster signed an affidavit setting forth that he was asking surrounding property owners to sign a petition waiving objections to rezone said premises and further therein stating that if said property was rezoned within 6 months, the same would not be used for gasoline service station purposes and he, Foster, would insert a clause in his deed to that effect. Defendants Freeman and

Murphy signed an affidavit stating they were asking surrounding property owners to waive objections to rezoning said premises to permit them to use said premises as a printing and engraving shop location and that in event said premises were so rezoned within 6 months said premises would not be sold or used for gas station or gasoline service station purposes and that they would not sell the same to be used as a gasoline service station location. The affidavit further stated, "It is their intention to build a building of masonry construction 40 feet wide and 60 foot long on said property. Our intention is to use said building for a printing and engraving shop."

On April 11, 1952, defendants Foster and wife conveyed the premises in question to defendants Murphy and wife and defendants Freeman and wife. This deed contained the following statement:

"Subject to the restriction that said property shall never be used for gas station or gasoline service station purposes."

This deed was recorded April 14, 1952.

Following the execution of the above-mentioned affidavits, on application of Foster for rezoning of said premises to permit use thereof by Freeman and Murphy doing business as Flint Graphic Service (printing and engraving shop), the city of Flint rezoned said premises from C-residential to D-commercial effective April 14, 1952.

On February 16, 1953, defendants Daniel E. Freeman and Annabelle Freeman, his wife, and Arthur D. Murphy and Elizabeth G. Murphy, his wife, conveyed the premises in question by warranty deed to defendant Irving Chimovitz, which deed was recorded February 27, 1953. The said deed made no direct mention respecting the use of said premises for gasoline station or gasoline service station purposes.

After the deed to Freeman and Murphy, they (Freeman and Murphy) were approached by defendant Chimovitz, agent for defendant Rose, seeking to purchase the premises. Chimovitz was informed by defendants Freeman and Murphy not only of the restriction contained in the Foster deed but also of the circumstances concerning the rezoning of said premises. Chimovitz claims he did not at first disclose his principal defendant Rose, or Roseline Oil Company, but before and after he did disclose the interest of Rose to his grantors, Chimovitz assured defendants Freeman and Murphy that the property was not to be used for gasoline service station purposes.

Mr. Rose's attorney, Mr. Goldberg, testified that some time before the operation of the last option, obtained December 19, 1952, to run for 60 days, he was furnished with the abstract, and upon checking it, discovered the covenant in the deed from Mr. and Mrs. Foster to Daniel Freeman and wife and Arthur Murphy and wife, prohibiting the erection of a gasoline station on the premises in question. When Goldberg noted the restriction in the chain of title, he secured from defendants Foster a quitclaim deed running to defendant Chimovitz in which said defendants attempted to remove the restriction contained in their previous deed to defendants Murphy and Freeman, which deed had been duly recorded and was evidently on record before Rose obtained from Fosters the deed which contained the Fosters' consent that the property could be used for gasoline station purposes. The deed by Foster and wife to Chimovitz was dated February 18, 1953, two days after the deed from Freeman and Murphy to Chimovitz. The deed from Foster and wife to Chimovitz stated that the purpose of it was to waive and revoke and set aside and to do away with a restriction contained in the deed from Fosters to Freeman and

Murphy. The deed by which Freemans and Murphys deeded the premises in question to Irving Chimovitz contained the following (still uneliminated):

"Subject to the building restrictions and zoning ordinances applying to said premises and subject to any easements or right-of-way which may exist in favor of governmental units, public utilities companies or in favor of any other person, firm or corporation."

After obtaining the deed from Fosters, defendants Rose applied to the Flint city commission to get permission to operate a gasoline station on the premises which was granted to them.

It must be considered that defendant Chimovitz acted on behalf of defendant Rose and that Rose was fully apprised of and approved all representations made by Chimovitz and possessed the same knowledge. Defendant Chimovitz testified:

"I have worked with Mr. Rose on and off for probably 15 years. * * *

"*Q.* Let me refresh your recollection. Mr. Goldberg's affidavit which is attached to the answer in this case says that 'sometime prior to July 17, 1952, your deponent,'—that is Mr. Goldberg,—'was consulted by Irving Chimovitz and Abe Rose relative to the purchase of the property situated at the southwest corner of east Court street and Stevens street, city of Flint.'

"*A.* Then I would accept that date, sir. I don't remember the date.

"*Q.* But you and Mr. Rose were then interested together in this property, were you not?

"*A.* Well, now, by 'interested together,' you mean financially or just something where I tried to help him get—

"*Q.* (Interposing): You tell us; I am asking you.

"*A.* It was very simple, sir. I don't remember the date of it, but on a basis of his being interested in procuring a piece of property at that address, and

by my knowing the principals who owned the property, and doing business with them at that time, and still, I told him I would try to buy the property, and I approached them to buy it.

"*Q.* And at that time Mr. Rose asked you to act as his representative in so doing?

"*A.* Actually not in so many words. I offered to buy the property if I could.

"*Q.* But for him?

"*A.* Actually yes, that is what—that was an unsaid understanding."

Defendant Chimovitz further testified:

"I obtained an option to purchase the property and that was renewed again in December. For the first option there was paid $100 and for the renewal the further sum of $1,900.  *  *  *

"*Q.* Didn't one of the checks, whether it was this one or not, one of the checks amounting, I think, to $1,900, wasn't that the check of Abe Rose?

"*A.* Well, now you are asking me something that, as I say, I don't remember. I wrote a check myself and got a check in return. Now, whether I wrote a $1,900 check and got a check in return, I truthfully don't remember.

"*Q.* You will remember this, will you not: One of the checks that was delivered to Mr. Freeman and Mr. Murphy for renewal of the option was Abe Rose's for $1,900?

"*A.* If that is the check you are telling me exists, I will believe you.

"*Q.* I am not testifying; I am asking you.

"*A.* Frankly, sir, I don't know, as I say. There'd be no reason for me to tell you either way, if it wasn't true.

"I obtained this money from Mr. Rose and I was acting as his agent in buying it. All information I received, I passed on to my principal, Mr. Rose.

"*Q.* Yes, and did you pass on the information that Mr. Murphy and Mr. Freeman both gave you; to-wit, that attempt had previously been made to rezone

this property, and that the residents objected, and that the only way that this property could be rezoned was by the agreement that it wouldn't be used for filling station purposes?

"*A.* No, sir.

"*Q.* You didn't pass that—

"*A.* (Interposing): I didn't. I passed on information only that an affidavit had been signed by a chiropractor."

Later on in his testimony, Chimovitz testified:

"*Q.* But all the money that you got either for the option or the purchase price, whether your check was given or Mr. Rose's check was given, came from Mr. Rose?

"*A.* Yes, sir.

"*Q.* And you were acting for him on it?

"*A.* In that respect, yes.

"*Q.* And whatever information you got with reference to this property, then, am I to understand, you considered it was your duty to pass on to Mr. Rose?

"*A.* I did, sir."

We conclude that defendant Rose, during all the progress of the events about procuring title to the property in question, had been told about the objections of the neighbors, the matter of the rezoning, and the deed containing a reservation of no use for gasoline station purposes, the later deed attempting to revoke it. Mr. Rose did not go on the stand as a witness.

The record shows only defendant Rose as interested in wrongfully causing Flint city authorities to come to the incorrect conclusion that the immediate neighbors and persons interested in nearby property had withdrawn objections to the use of the property for gasoline service station purposes.

The one important thing and characteristic of the difficulties surrounding Mr. Rose's acquiring the property in question with a permission to use the

property for gasoline station purposes was the difficulty in getting the change of zoning ordinance. Other details were comparatively unimportant so that when Mr. Chimovitz twice testified that he told Mr. Rose all the important information that he obtained about this property (and only once he denied passing on that particular information about rezoning) every probability stands in favor of the proposition being established by the testimony of Mr. Chimovitz himself that Mr. Rose knew, from practically the very beginning, everything that Chimovitz knew about the gasoline station rezoning difficulty. In any case, he, Mr. Rose, does not deny that he had it at a time comparatively early in the proceedings.

Mr. Freeman testified:

"*Q.* Mr. Freeman, how did you come to accept this affidavit?

"*A.* Harold Ranes was the real-estate man on the property, and he came into the office on an afternoon and said, 'I need this affidavit. We are going to take it before the city commission to show that everybody has agreed it is not to be zoned for a gas[oline] station, D-4 except gas station,' and my partner and I quickly signed it, and that is what we understood it was for.

"*Q.* Mr. Freeman, you have already stated in your pleadings here that it was the understanding of you and Mr. Murphy, both, that the zoning specifically rezoned it for commercial with the proviso it could not be used for gas[oline] station.

"*A.* We thought that is what it was.

"*Q.* And when did you first learn that was not true?

"*A.* When this case came up."

Defendants Freeman and Murphy were parties to the activities by which the surrounding property owners had given their consent to rezoning on the

express condition that the premises would never be used for gasoline station purposes, and said Freeman and Murphy have never cancelled on their part any part of the understandings by which it was agreed that the premises were not to be used for gasoline station purposes. The restriction in the deed to Freemans and Murphys was incorporated by reference in their deed to Chimovitz. Plaintiffs therefore contend that they have still remaining the foundation for their claim to a right to enforce the understanding contained in the deed from Freemans and Murphys to Chimovitz, which as we have just seen, still remains an uncancelled agreement in that deed and not cancelled by the makers of that deed.

Defendant Rose was acting for purposes beneficial only to himself when he procured from Fosters the deed that cancelled the gasoline station restriction. In any event, Fosters at the time they gave that deed were no longer the owners of the property, and the restriction in the deed from Freemans and Murphys to Chimovitz, who later deeded to Rose, still remained uncancelled. Mrs. Chimovitz joined with her husband in making the deed to Rose and wife.

Defendants Freeman and Murphy were in the printing business and used their affidavit to persuade the city zoning authorities to transfer the property in question from residential to a classification in the ordinance that would permit the printing business. At the time of the execution of the affidavit, and the neighbors' agreeing to rezoning, all of them believed that such rezoning would permit printing business, but prohibit gasoline station use.

Defendant Freeman testified on cross-examination as follows:

"*Q.* Witness, did you continue to tell Mr. Chimovitz these same facts until the transaction was finally closed?

"*A.* The next time that it came up was when my partner and I received Abe Rose's, Roseland [Roseline?] Oil check. That frightened us. Within a few days time Mr. Chimovitz was in our shop, and I stopped him and said, 'Irv, Murphy and I are worried. We see Abe Rose is in on this thing. That last check was from Abe Rose.' He said, 'What about it?' I said, 'We were afraid he might get some notion to put a gas station up. When did he come into it?" He said, 'Why, he's been in it right along. As a matter of fact, there is 3 of us in it.' I said, 'Might he get an idea to build a gas station?' He said, 'No, he might want to put an office building there but not a gas station.' I said, 'That relieves our mind an awful lot, Irv, thanks,' and I went out and told my partner about it."

Defendant Rose is barred from use of the property in question by restrictions in the deed to Chimovitz, his grantor. The use for gasoline station purposes was obtained by trickery and in violation of Chimovitz' promises to Freeman and Murphy. Chimovitz in the transactions about the property in question was entirely the agent and representative of Rose. Rose was bound by the knowledge and actions of Chimovitz. Rose entirely ignored the representations by Chimovitz that the premises would not be used for gasoline sales. It was by similar promises that the rezoning had been procured.

The trial court, among other things, found:

"The defendants Rose, in conjunction with defendant Chimovitz, perpetrated fraud in securing the rezoning of the premises and a permit to erect a gas station on the premises, and therefore their action should be and is enjoined."

The plaintiffs claim rights under the third-party beneficiary statute, CL 1948, § 691.541 *et seq.* (Stat Ann § 26.1231 *et seq.*). However, in view of our decision in the matter, the claim of the plaintiffs as to

benefits under the said statute need not be considered.

The decree appealed from is affirmed. Costs to plaintiffs.

The above opinion was prepared by the late Justice REID whose death occurred before the filing of the same.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.